CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 20, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JERVOD CONTAE SIMMONS, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:22-cv-440 |
| | ) |
| v. | ) By:   Michael F. Urbanski |
| | ) Senior United States District Judge |
| LIEUTENANT E. EARHART et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Jervod Contae Simmons, a Virginia inmate proceeding pro se, filed a second amended complaint pursuant to 42 U.S.C. § 1983, alleging that correctional officers used excessive force against him without provocation. 2nd Am. Compl., ECF No. 65, ¶¶ 9-13. The matter is now before the court on a motion for summary judgment filed by defendants Lieutenant E. Earhart, Sergeant T. Brown, Officer W. Devine, Officer Z. Waller, Officer D. McClean, Officer N. Davis, and Officer B. Lineberry. ECF No. 68.[1] The motion has been fully briefed and is ripe for review. ECF No. 69; ECF No. 72; ECF No. 73. Because the record establishes that Simmons failed to properly exhaust his administrative remedies, the motion for summary judgment is **GRANTED**.

---

[1] The Virginia Department of Corrections, the Director of the Virginia Department of Corrections, Harold Clarke, and an Intel Investigator at River North Correctional Center, Lieutenant K. King, were previously terminated as defendants in this action. ECF No. 64. The only other remaining defendant in this case, Nurse Karen Lam, has also filed a motion for summary judgment. ECF No. 82. However, although Lam asserts that she "joins in the co-defendants' motion for summary judgment" on the grounds that Simmons failed to exhaust administrative remedies, Lam's motion, filed on February 18, 2025, is not yet ripe for review. Lam Mem. Supp. Mot. Summ. J., ECF No. 83 at 3. Accordingly, it will be addressed separately.

1

I.

Simmons is currently incarcerated at Red Onion State Prison, but at the time of the alleged excessive use of force, he was incarcerated at River North Correctional Center. 2nd Am. Compl., ECF No. 65, ¶¶ 3, 6. Both prisons are operated by the Virginia Department of Corrections. Id.

Simmons alleges that on February 3, 2021, he was attempting to get Lieutenant Earhart's attention, having been instructed to speak with him, when Officer Waller hit him in the upper chest area. Id. ¶ 9. Officer Waller became enraged "with no justification," and when Simmons attempted to protect himself, Officer McClean shot him in the head with a 40 mm single launcher at close range. Id. ¶ 10. After Simmons had already been placed on the ground to be handcuffed and shackled, other officers arrived and joined Officers Waller and McClean in using force against Simmons. Id. ¶¶ 11-13. Lieutenant Earhart, Sergeant Brown, Officer Davis, Officer Devine, and Officer Lineberry are all alleged to have participated in some way. Id.

Following these events, Simmons was emergency transferred out of River North Correctional Center. Id. ¶ 13. Once at Red Onion State Prison, on February 17, 2021, Simmons filed an Informal Complaint. Id. ¶ 14; Resp. Opp'n Mot. Summ. J. Ex. 2, ECF No. 72-2 at 1. Then, on March 13, 2021, Simmons filed a Regular Grievance, which he resubmitted on March 16, 2021. Resp. Opp'n Mot. Summ. J. Ex. 2, ECF No. 72-2 at 2. Simmons alleges "nothing was done about this matter at hand" by the Virginia Department of Corrections. 2nd Am. Compl., ECF No. 65, ¶ 14.

2

Simmons filed his first complaint on August 1, 2022. ECF No. 1. With the court's leave, ECF No. 18; ECF No. 64, Simmons then filed an amended complaint on November 14, 2022, ECF No. 19, and a second amended complaint on June 12, 2024, ECF No. 65. Defendant correctional officers moved for summary judgment on July 2, 2024. ECF No. 68.

Defendants' motion for summary judgment is based entirely on Simmons' failure to exhaust his administrative remedies by failing to comply with the deadlines set by applicable Virginia Department of Corrections grievance procedures, as required by the Prison Litigation Reform Act ("PLRA"). Mem. Supp. Mot. Summ. J., ECF No. 69. Specifically, defendants rely on a declaration by S. Sutfin, the Grievance Coordinator for River North Correctional Center, which explains that Virginia Department of Corrections Operating Procedure 866.1, effective January 1, 2021, with a revised effective date of February 1, 2021, which is titled the "Offender Grievance Procedure," "provided the administrative process for resolving inmate issues and complaints in February 2021." Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 1. Defendants attached the "Offender Grievance Procedure" itself to the Sutfin declaration. Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 5. The declaration concludes that Simmons failed to exhaust available administrative remedies because he failed to submit a timely Regular Grievance according to the "Offender Grievance Procedure." Id. at 3. Defendants contend that under the "Offender Grievance Procedure," a prisoner must file a Regular Grievance within thirty days of the original incident or discovery of the incident, and Simmons filed his Regular Grievance on March 13, 2021, which is more than thirty days after the original incident took place on February 3, 2021. Mem. Supp. Mot. Summ. J., ECF No. 69 at 8.

3

Simmons responds that the grievance procedure excuses delay "beyond the offender's control," and here, Simmons was delayed due to his emergency transfer from River North Correctional Center to Red Onion State Prison. Resp. Opp'n Mot. Summ. J., ECF No. 72, ¶¶ 5-6. Simmons was transferred on the date of the incident, February 3, 2021, and Simmons asserts that the transfer led to a delay of approximately thirteen days as Simmons waited to receive his personal property, which he needed "to submit required documents," id. ¶ 5.

However, defendants reply that even assuming that these were circumstances beyond Simmons' control justifying a delay in filing a Regular Grievance, the extension provision in the "Offender Grievance Procedure" only provides an inmate an additional "five days to file their grievance once the reason for delay is no longer valid." Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 11-12. Defendants argue that, according to Simmons' own account, the reason for his delay had elapsed within thirteen days of the original incident, well before the thirty-day deadline, so there was no justification for Simmons' failure to comply with the deadline. Reply Mem. Supp. Mot. Summ. J., ECF No. 73 at 2. Defendants contend Simmons' failure to comply with the deadline constituted a failure properly to avail himself of available administrative remedies.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc.,

4

477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See id. at 255; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

The motion for summary judgment in this case rests on defendants' claim that Simmons failed to exhaust administrative remedies. Under the PLRA, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). To satisfy the exhaustion requirement, "proper exhaustion of administrative remedies is necessary." Woodford v. Ngo, 548 U.S. 81, 83 (2006).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a

5

preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the inmate. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

### III.

Defendants here have met their burden to prove that Simmons failed to exhaust his administrative remedies, and the only justification Simmons has offered for his failure timely to comply with the "Offender Grievance Procedure" does not excuse his late submission of a Regular Grievance.[2] Accordingly, there is no genuine dispute as to any fact material to whether Simmons properly exhausted, and defendants are entitled to judgment as a matter of law under the PLRA.

To exhaust a claim properly, a prisoner must file grievances with sufficient detail to alert prison officials to possible constitutional claims. See Smith v. Rodriguez, No. 7:06-cv-521, 2007 WL 1768705, at *3 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 476 (10th Cir. 2004)). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including "deadlines and other critical procedural rules," or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. Woodford, 548 U.S. at 90. To determine what procedures and deadlines apply, the court looks to the procedures set out by the prison itself. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

---

[2] Simmons has not raised any claim that administrative remedies were unavailable. Resp. Opp'n Mot. Summ. J., ECF No. 72. Nor could he. "[A] grievance procedure is rendered 'unavailable' under the PLRA only if an inmate actually is prevented from using it," and here, Simmons was able timely to submit an Informal Complaint, despite the circumstances he has identified concerning his transfer and delay receiving his property. Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021).

Jones, 549 U.S. at 218. Thus, here, the applicable deadlines are those promulgated by the Virginia Department of Corrections in the "Offender Grievance Procedure" in effect in February 2021, which defendants have attached to the Sutfin declaration in support of their motion for summary judgment. Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 5.

The first step set forth in the "Offender Grievance Procedure" is the Informal Complaint process, which begins with a verbal complaint. Id. at 8. If verbally discussing a complaint with staff does not lead to a resolution, an inmate may submit a written Informal Complaint within fifteen days of the original incident or discovery of the incident. Id. Here, Simmons did just that, submitting his Informal Complaint one day before the deadline on February 17, 2021. Resp. Opp'n Mot. Summ. J. Ex. 2, ECF No. 72-2 at 1.

If the Informal Complaint does not lead to a satisfactory resolution or if fifteen days have passed without a response from staff, the inmate may file a Regular Grievance. "The Regular Grievance must be placed in the Grievance Mailbox within 30 days of the original incident or discovery of the incident unless a more restrictive timeframe applies." Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 8. This would place the deadline for submitting a Regular Grievance concerning an incident on February 3, 2021, on March 5, 2021. However, Simmons submitted his Regular Grievance at least eight days late on March 13, 2021, and resubmitted his Regular Grievance on March 16, 2021. Resp. Opp'n Mot. Summ. J. Ex. 2, ECF No. 72-2 at 2.

The "Offender Grievance Procedure" contains exceptions to the thirty-day timeline for filing a Regular Grievance. There is an exception for allegations of sexual abuse, for which there is no time limit for filing a grievance, an exception for cases where a more restrictive

time limit has been imposed, and an exception that applies if the "offender has not received formal orientation on accessing the 'Offender Grievance Procedure' at that institution." Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 11-12. Finally, as is at issue here, if "delay is beyond the offender's control, i.e. injury, sickness, etc.," then the "offender has five days to file their grievance once the reason for delay is no longer valid." Id.

Simmons claims that this exception applies because he was transferred on the date of the incident, February 3, 2021, and due to the transfer, he did not have access to certain personal property he needed "to submit required documents" for approximately thirteen days. Resp. Opp'n Mot. Summ. J., ECF No. 72, ¶¶ 5-6. However, assuming Simmons was justifiably delayed in being able to begin utilizing the grievance process until approximately February 16, 2021, that was still well before the deadline on March 5, 2021.

The "Offender Grievance Procedure" does not extend the thirty-day deadline based on delays within the thirty-day period. It merely provides an additional five days beyond the resolution of the reason for delay if the delay beyond the inmate's control prevents the inmate from submitting their grievance because the reason for delay is ongoing when the thirty-day deadline expires. Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 11-12. To read the procedure's grant of an additional five days "once the reason for delay is no longer valid" as applying to delays within the thirty-day period would be nonsensical, as it would lead to a more restrictive deadline (for example, here, such a reading would suggest Simmons would receive five additional days "once the reason for delay [was] no longer valid" on about February 16, 2021, leading to a February 21, 2021 deadline, rather than a March 5, 2021 deadline, which is certainly not what the policy intended). Id. And even if the additional five days were applied

8

to the deadline on March 5, 2021, that would only justify a delay until March 10, 2021, not March 13, 2021. Thus, the delay Simmons asserts cannot justify his failure timely to submit a Regular Grievance under the "Offender Grievance Procedure." Because "[p]roper exhaustion demands compliance with [a prison's] deadlines," Simmons' failure to comply with the thirty-day deadline for submitting a Regular Grievance constitutes a failure properly to exhaust available administrative remedies. Woodford, 548 U.S. at 90-91.

Simmons' transfer and trouble getting his property also cannot be considered as freestanding justifications for delay in filing his Regular Grievance separate from the provisions of the "Offender Grievance Procedure." As the Supreme Court has stated, "[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross v. Blake, 578 U.S. 632, 639 (2016). Thus, "a court may not excuse a failure to exhaust, even to take such circumstances into account." Id.[3]

Nor does it matter that Simmons attempted to avail himself of other steps of the "Offender Grievance Procedure." Failure to satisfy procedural requirements of a prison's grievance process at just one step is sufficient to constitute failure to exhaust. As the grievance documents Simmons attached to his response in opposition to the motion for summary judgment indicate, the "Expired Filing Period" was cited by the "Institutional Ombudsman/Grievance Coordinator" as the reason for rejecting Simmons' Regular Grievance. Resp. Opp'n Mot. Summ. J. Ex. 2, ECF No. 72-2 at 3. Simmons appealed this

---

[3] Because the impediments Simmons has identified were not so severe as to prevent him from submitting a timely Informal Complaint, fashioning an exception to the exhaustion requirement would be particularly inappropriate in this case. Varner v. Shepard, 11 F.4th 1252, 1264 (11th Cir. 2021) (noting that "the statutory language and relevant case law make it clear that courts are not free to fashion exceptions to the exhaustion requirement, even when the circumstances of a particular case may seem to merit one").

rejection of his Regular Grievance, but his appeal was unavailing because the rejection was based on Simmons' failure to comply with the thirty-day deadline. Resp. Opp'n Mot. Summ. J., ECF No. 72, ¶¶ 7-9. As the "Offender Grievance Procedure" states, the "exhaustion requirement is met only when a Regular Grievance has been accepted"—not, as here, rejected—"into the grievance process and appealed, without satisfactory resolution of the issue." Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 69-1 at 17. This view of exhaustion is in keeping with the Supreme Court's characterization of the exhaustion requirement as a requirement of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, Simmons' failure to comply with deadlines at the Regular Grievance step in the "Offender Grievance Procedure" was a failure to exhaust "properly," which prevented the prison from addressing Simmons' claims on the merits, even though Simmons was otherwise persistent in filing his initial Informal Complaint and attempting to appeal the rejection of his Regular Grievance.

## IV.

Thus, Simmons has failed to exhaust administrative remedies as required by the PLRA. Viewing the record as a whole, specifically, the language of the operative "Offender Grievance Procedure" provided by defendants and Simmons' submissions of his Informal Complaint and Regular Grievance filings, there is no genuine dispute of material fact as to whether Simmons exhausted his administrative remedies, and defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment is **GRANTED**.

An appropriate order will be entered.

Entered: 03-17-2025

*/s/ Michael F. Urbanski/*

Michael F. Urbanski
Senior United States District Judge

11