CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 05, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JERVOD CONTAE SIMMONS,    )  | |
|     Plaintiff,    ) | Case No. 7:22-cv-00440 |
|     ) | |
| v.    ) | |
|     ) | By: Michael F. Urbanski |
| NURSE KAREN LAMB,* et al.,    ) | Senior United States District Judge |
|     Defendants.    ) | |

## MEMORANDUM OPINION

Jervod Contae Simmons, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that correctional officers at River North Correctional Center used excessive force against him and that he was denied adequate medical treatment for his resulting injuries. By memorandum opinion and order entered March 20, 2025, the court granted summary judgment in favor of the correctional defendants based on Simmons's failure to exhaust administrative remedies. See ECF Nos. 88, 89. The sole remaining defendant, Nurse Karen Lamb, has moved for summary judgment on the same ground. Lamb's motion has been fully briefed and is ripe for review. For the following reasons, the motion for summary judgment, ECF No. 82, is **GRANTED**.

### I.   Background

**A.   Summary of Allegations and Claims**

Simmons claims that correctional officers at River North used excessive force against him on February 3, 2021, after he attempted to speak to a supervisor. 2d Am. Compl., ECF

---

\* The Clerk shall amend the docket to reflect the correct spelling of this defendant's last name.

No. 65, at 3. He alleges that he was punched in the chest, shot in the head with a 40 mm single launcher, and slammed to the ground. Id. at 3–4. He further alleges that officers placed him in excessively tight restraints, that they continued to physically assault him after he was restrained, and that he "was denied any adequate medical treatment for [his] injuries." Id. at 4, 15. After filing the operative complaint, Simmons identified Nurse Karen Lamb as the individual responsible for denying him adequate medical treatment. ECF No. 76 at 2.

**B.    Evidence Relevant to Exhaustion**

    **1.    Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Sutfin Decl., ECF No. 69-1, at ¶ 4. Grievable issues include "[a]ctions of staff" and "[c]onditions of care under the authority of the [VDOC]." OP 866.1 § III(B)(1)(a) (eff. Jan. 1, 2021), Sutfin Decl. Encl. A, ECF No. 69-1.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally. If a verbal complaint is not resolved to the inmate's satisfaction, the inmate may submit a written complaint. OP 866.1 § I(D)(2). The written complaint "must be received by the Institutional Ombudsman or designated staff within 15 days of the original incident or discovery of the incident." Id. § II(B)(1)(d). Following receipt of a written complaint, "staff have 15 days to provide an appropriate response to the complaint." Id. § I(D)(3). If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance regarding the issue. Id. § I(D)(4).

Regular grievances must be submitted within 30 days from the date of the incident or the discovery of the incident, unless an exception applies. Id. § III(B)(5). For instance, if a "delay is beyond the offender's control, i.e. injury, sickness, etc.," then the "offender has five days to file their grievance once the reason for delay is no longer valid." Id.

A completed regular grievance "must include the offender's name, number, housing information, the date when the incident occurred or was discovered, and a detailed explanation of the issue and how it affected them." Id. § III(B)(2). The regular grievance form includes spaces for the "Individuals Involved in Incident" and the "Date/Time of Incident." Sutfin Decl. Encl. C, ECF No. 69-1. The form also include spaces for an inmate to describe his complaint and the action he wishes to be taken. Id.

Following the receipt of a regular grievance, prison officials have two days to accept or reject it. OP 866.1 § I(D)(5). If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." Id. § III(C)(4). If the grievance does not meet the intake criteria, prison officials must return it to the inmate with an explanation for its rejection. Id. § III(C)(5). The grievance form lists several reasons for which a grievance can be rejected at intake, such as "Expired Filing Period." See Sutfin Decl. Encl. C, ECF No. 69-1. If an inmate disagrees with an intake decision, the inmate may appeal the decision to the Regional Ombudsman within five days. OP 866.1 § III(C)(6).

When a regular grievance is accepted during the intake process, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. Id. § III(F)(1)–(2). If an inmate is dissatisfied with the determination at Level I, the inmate may appeal the determination to Level II. Id. § IV(C). "For most issues, including

3

the ones raised in this lawsuit, Level II is the final level of review." Sutfin Decl. ¶ 11, ECF No. 69-1. OP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief and that "[t]he exhaustion requirement is met only when a Regular Grievance has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(A)–(B).

### 2. Applicable Grievance Records

On February 17, 2021, after being transferred from River North to Red Onion State Prison, Simmons filed an informal complaint alleging that he had been physically assaulted without justification on February 3, 2021. Sutfin Decl. Encl. B, ECF No. 69-1. The complaint listed "Officer Z. Waller + unknown officers" as the "Individuals Involved in Incident." Id. It did not mention the medical department or allege that any medical staff member denied him medical treatment following the use of force. Id. The complaint was assigned to an investigator at River North, and on March 4, 2021, a correctional officer responded that an investigation had been conducted regarding the matter. Id.

On March 13, 2021, Simmons signed a regular grievance that he resubmitted on March 16, 2021. Sutfin Decl. Encl. C, ECF No. 69-1. Simmons alleged that he was physically assaulted by Officer Z. Waller and other correctional officers on February 3, 2021, and he attached the informal complaint raising the same issue. Id. The regular grievance did not mention the medical department or allege that Simmons was denied medical treatment following the use of force. Id.

On March 23, 2021, the Grievance Coordinator rejected the regular grievance as untimely. Id. The Grievance Coordinator checked the box for "Expired Filing Period," and

noted that more than 30 days had passed since the incident allegedly occurred on February 3, 2021. Id.

Simmons did not attempt to appeal the intake decision. Sutfin Decl., ECF No. 69-1, ¶ 16. Nor did he file a separate written complaint or regular grievance in which he complained of being denied adequate medical treatment. Id. ¶ 20.

## II.     Standard of Review

Nurse Lamb has moved for summary judgment on the basis that Simmons failed to exhaust his administrative remedies prior to filing suit. Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

## III.    Discussion

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that

5

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative agency authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks and brackets omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. Consequently, "an untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 83–84.

The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." Jones, 549 U.S. at 218. As a result, "[t]he level of detail necessary in a grievance to comply with the grievance procedure will vary from system to system and claim to claim." Id. "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is

6

sought.'" Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); see also Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017).

The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). "Available" means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." Id. at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense: (1) where the procedure "operates as a simple dead end," with correctional officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643-44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011)

7

(concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

**A.   Proper Exhaustion**

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Simmons properly exhausted his claim for denial of medical treatment against Nurse Lamb. Neither the informal complaint signed on February 17, 2021, nor the regular grievance signed on March 13, 2021, alleged that Simmons was denied medical treatment following the use of force on February 3, 2021. Consequently, neither submission "alert[ed] the prison to the nature of the wrong for which redress is sought" against Nurse Lamb. Wilcox, 877 F.3d at 167 n.4 (quoting Strong, 297 F.3d at 650). And it is undisputed that Simmons did not file any other informal complaints or regular grievances alleging that he was denied medical treatment following the use of force.

Additionally, for the reasons set forth in the court's previous decision, Simmons failed to timely submit the regular grievance that he signed on March 13, 2021, regarding the use of force on February 3, 2021. See Mem. Op., ECF No. 88, at 9. "Because '[p]roper exhaustion demands compliance with [a prison's] deadlines,' Simmons' failure to comply with the thirty-day deadline for submitting a Regular Grievance constitutes a failure properly to exhaust available administrative remedies." Id. (quoting Woodford, 548 U.S. at 90–91).

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Simmons properly exhausted his claim against Nurse Lamb and that Nurse Lamb has met her burden of proving that he failed to do so.

**B.     Availability of Administrative Remedies**

In response to Nurse Lamb's motion for summary judgment, Simmons argues that he "never had an 'available remedy' to exhaust in the first place," since the VDOC's grievance procedure does not provide for compensatory or punitive damages "that can make a plaintiff whole again from physical or mental injuries." Pl.'s Resp. Summ. J., ECF No. 90, at 4–5. However, the PLRA requires exhaustion "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). Thus, "[e]ven when [a] prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

Although Simmons also references the types of circumstances that render administrative remedies unavailable to inmates, see Ross, 578 U.S. at 643–44 (identifying three examples), he has offered no evidence from which a reasonable factfinder could conclude that any of these circumstances apply here. There is no evidence that the grievance process available to VDOC inmates "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," that the procedures are "so opaque" that they are "incapable of use," or that prison officials used "machination, misrepresentation, or intimidation" to "thwart" Simmons from taking advantage of the grievance process. Ross, 578 U.S. at 644. His conclusory references to the circumstances identified in Ross do not suffice to create a genuine issue of material fact as to the availability of administrative remedies. See Merchant v. Corizon Health, Inc., 993 F.3d 733, 742 (9th Cir. 2021) (emphasizing that a prisoner must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative

9

remedies effectively unavailable to him"); Mackey v. Ward, 128 F. App'x 676, 677 (10th Cir. 2005) (holding that an inmate's "conclusory allegations that pursuit of administrative remedies would be futile" were "insufficient to excuse his failure to exhaust").

In sum, there is no evidence from which a reasonable factfinder could conclude that Simmons properly exhausted his administrative remedies or that the applicable grievance process was unavailable to him through no fault of his own. Accordingly, Nurse Lamb is entitled to summary judgment on the exhaustion defense.

### IV. Conclusion

For the reasons stated, Nurse Lamb's motion for summary judgment, ECF No. 82, is **GRANTED**. An appropriate order will be entered.

Entered: August 5, 2025

Michael F. Urbanski
U.S. District Judge
2025.08.05
11:23:04 -04'00'

Michael F. Urbanski
Senior United States District Judge